**Charles RAY et al., Plaintiffs-Appellees.**

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant-Appellant.**

**No. 73-2133.**

United States Court of Appeals, Sixth Circuit.

Argued April 12, 1974.

Decided June 14, 1974.

Thomas J. Manahan, Finn, Manahan & Pietrykowski, Toledo, Ohio, for defendant-appellant.

Wilbur C. Jacobs, Mittendorf, Jacobs, Reiser & Zraik, Toledo, Ohio, for plaintiffs-appellees.

Before PECK and McCREE, Circuit Judges, and CECIL, Senior Circuit Judge.

JOHN W. PECK, Circuit Judge.

We are asked to decide, in this diversity case, whether Ohio law permits the "stacking" of uninsured motorist coverages from separate motor vehicle liability insurance policies issued to a single insured on different automobiles. The matter is before us on an interlocutory appeal from the partial granting of summary judgment in favor of the plaintiffs, the district court having certified that its order involved a controlling question of law as to which a substantial ground for difference of opinion exists and that an immediate appeal would advance this litigation.

The facts are not in dispute. The plaintiffs-appellees, Charles Ray, his wife, and his daughter, received serious injuries in a head-on collision with an uninsured motorist. At the time of the accident, State Farm Mutual Automobile Insurance Company (hereinafter "State Farm"), the defendant-appellant herein, had in force a separate automobile liability insurance policy on each of three automobiles owned by Mr. Ray, one of which applied to the car in which they were riding. Appellees were "insureds" under each of the policies. With State Farm's consent, appellees obtained default judgments against the uninsured motorist totalling $167,000.

The provisions of the three policies of insurance issued to Mr. Ray were identical. The limits afforded under the uninsured motorist clause in each policy was $15,000 per person and $30,000 per accident. Aggregated, the three policies provided uninsured motorist coverage of $45,000 per person and $90,000 per accident. Below, appellees sought, *inter alia*, a declaratory judgment that they were entitled to aggregate the uninsured motorist coverages from the three separate policies; that is, they asked the district court to declare that they were entitled to "stack" the three coverages for the single accident involving an automobile insured under one policy.

The district court, in response to a motion for partial summary judgment filed by appellees, entered an order granting the motion for summary judgment to allow "stacking" of the uninsured motorist coverages. State Farm petitioned this Court for leave to appeal from that order, and on the certification of the district court, as hereinabove indicated this Court granted that petition.

Appellees have attempted to raise the issue of the district court's refusal to allow "stacking" of medical payment coverages, but this issue was not properly raised and is not before us here.

State Farm takes the position that under the terms of the policies, "stacking" of uninsured motorist coverages is not permitted, and further, that Ohio law recognizes the validity of such a limitation. Appellees urge contrary conclusions. The resolution of this dispute turns, in the first instance, on the language in the contracts of insurance between the parties.

The uninsured motorist section of the policies provides that State Farm agrees with the insured:

"To pay all sums which the *insured* or his legal representative shall be legally entitled to recover as damages from the owner or operator of an *uninsured motor vehicle* because of *bodily injury* sustained by the *insured*, caused by accident and arising out of the ownership, maintenance or use of such *uninsured motor vehicle* . . . ." (Emphasis the policies'.)

Immediately following this section appear a number of exclusions, one of which reads:

"THIS INSURANCE DOES NOT APPLY:

   \*    \*    \*    \*    \*    \*

"(b) to bodily injury to an *insured* while *occupying* or through being struck by a land motor vehicle owned by the named insured or any *resident* of the same household, if such vehicle is not an *owned motor vehicle* . . . ." (Emphasis the policies'.)

The term "owned motor vehicle" is defined elsewhere as "the motor vehicle or trailer described in the declarations . . . ."

The above language clearly and unambiguously states that uninsured motorist coverage does not extend to the insureds when they are occupying a motor vehicle owned by one of the insureds that is not described in the declaration section of

the policy. In the instant case, Mr. Ray purchased three separate liability policies, each describing in its declaration clause one of the three automobiles he owned. The insureds were riding in one of these vehicles when the accident occurred, and the policy in which that vehicle was described definitely provided uninsured motorist coverage. However, because the involved vehicle was not an "owned motor vehicle" under either of the policies on the other two automobiles, the uninsured motorist insurance provided therein was not applicable to this accident.

At this point we must delimit the problem before us. The uninsured motorist coverage in the State Farm policies extended protection to the insureds not only when they were riding in the "owned motor vehicle," but also when they were occupants of motor vehicles owned by third persons, or when they were pedestrians, on horseback, or whatever. The exclusionary language relied upon by State Farm does not apply unless the insureds were occupying a vehicle owned by one of them, making available the argument that they would be entitled to "stack" the coverages if any of the above mentioned situations arose. We are not, however, faced with those questions in this case, and we do not express an opinion as to the result that might be reached under those circumstances.

Having resolved the threshold question concerning the contractual language in the uninsured motorist provisions in favor of State Farm, we meet the further issue of whether such an exclusion is effective under Ohio law. Ohio Revised Code Section 3937.18, which became effective in 1965, requires insurance carriers to offer uninsured motorist coverage in every motor vehicle liability policy issued.[1] Although there is

---

1. O.R.C. § 3937.18 reads in pertinent part: "(A) No automobile liability . . . policy of insurance insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle shall be . . . issued . . . unless coverage is provided therein

. . . for the protection of persons . . . legally entitled to recover damages from owners or operators of uninsured motor vehicles . . . ."
The minimum limits to be offered are $12,500 per person, $25,000 per accident. O.R.C. § 4509.20.

a wealth of cases from other jurisdictions[2] dealing with issues similar to that here presented, at the time the district court had this case under advisement it did not have the benefit of an Ohio case on point. Since that time, however, three cases have been handed down by Ohio appellate courts directly bearing on the question of "stacking," but because the Supreme Court of Ohio has not addressed itself to this issue to date, Ohio law "is not finally and conclusively declared." Michie v. Great Lakes Steel, 495 F.2d 213 (6th Cir. 1974). Following the dictates of Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), we hereinafter seek to determine what the Supreme Court of Ohio would do in this case by reference to these three court of appeals decisions.

On June 30, 1973, the Court of Appeals of Montgomery County, Ohio, held that uninsured motorist coverage cannot be aggregated. Hurles v. Republic Franklin Ins. Co., Case No. 4209 (Ct. App. Montgomery Co., Ohio, filed June 30, 1973). In that case the insured had a single insurance policy which afforded uninsured motorist coverage for each of the two automobiles which he owned, but separate premiums were charged for each automobile. Injured by an uninsured motorist while operating one of the insured vehicles, insured claimed the right to "stack" the uninsured motorist coverage for the vehicle not involved in the accident on top of that provided for the automobile that was involved. In reaching its conclusion not to allow "stacking," the court reasoned that uninsured motorist coverage for two automobiles was purchased by the payment of separate premiums, and the nonpayment of either one of the premiums would have resulted in a loss of coverage for one of the vehicles. Therefore, since "there is separate consideration for each premium," the insured was only entitled to the coverage for the vehicle involved in the accident.

In Nichols v. Allstate Ins. Co., Case No. CA 73–04–0037 (Ct.App. Butler Co., Ohio, filed December 10, 1973), the insured owned two automobiles covered by a single insurance policy which contained separate premium payment provisions for uninsured motorist coverage. The policy provided that "[w]hen two or more automobiles are insured by this policy, the terms of this policy shall apply separately to each . . . ." The court held that insured, who was injured by an uninsured motorist while occupying one of the covered automobiles, was not entitled to "stack" the coverages because, (1) the insured was informed "clearly and without ambiguity, that multiple coverage has not been purchased by him," and (2) the public policy of Ohio (as manifest in O.R.C. § 3937.18) was satisfied when the minimum limits of uninsured motorist coverage was provided. The court specifically stated that language limiting uninsured motorist coverage to single recovery was valid if it was clear and unambiguous.

The Court of Appeals of Franklin County, Ohio, was confronted with a situation generally similar to that involved in the above cases in Weemhoff v. Cincinnati Ins. Co., Case No. 73AP–419 (Ct.App. Franklin Co., Ohio, filed March 26, 1974). After reviewing the *Hurles* and *Nichols* decisions, the court found that the involved "policy affords a single uninsured motorist coverage collectively for all motor vehicles insured thereunder," and held "stacking" inappropriate. In reaching this result, however, the court stated, in obiter dictum, that "[i]f there had been two separate policies issued, one for each of the automobiles, regardless of the premium rate, plaintiffs would be entitled to stack coverages."

The district judge and both parties, each urging the interpretation which suits its purposes, and the *Weemhoff* opinion relied heavily on the decision rendered by the Supreme Court of Ohio in Curran v. State Automobile Mutual

2. *See generally*, Annot., 37 A.L.R.3d 1263 (1971).

Ins. Co., 25 Ohio St.2d 33, 266 N.E.2d 566 (1971). The Syllabus of *Curran* reads as follows:

"1. Where an insurer provides uninsured motorist protection, as required by R.C. 3937.18, it may not avoid indemnification of its insured under that coverage by including in the insurance contract an 'other insurance' clause, which, if applied, would relieve the insurer from liability in circumstances where the insured has other similar insurance available to him from which he could be indemnified. Such an uninsured motorist coverage limitation is repugnant to the statute.

"2. Where an insured has uninsured motorist coverage available to him under two policies of insurance and has collected a portion of his damages from the primary insurer, but has not been indemnified to the full extent of his injury, he may collect for the balance of his damages, to the extent of its policy limits, from the secondary insurer."

The *Weemhoff* court found in the above statement of law the implication that where there are two separate insurance policies issued to a single insured on two or more automobiles, the insurance carrier (or carriers) is liable for the full damages sustained by the insured up to the total coverage of all the policies combined. We do not feel *Curran* dictates that conclusion.

*Curran* states that an insured could collect from two policies where the coverages were "available to him." We take this to mean that absent an effective exclusion of some sort, "stacking" is permitted. That is not the case here, however, as the policies clearly defined the limits of coverage not to include "stacking" when the insured was occupying an owned, but not described, vehicle.

In *Curran* the plaintiff was a passenger in an automobile struck by an uninsured motorist. Both the plaintiff and the owner of the car in which she was riding had in force a liability insurance policy, and these policies were written by different companies. Plaintiff was, by definition, an insured under both of the policies, and as such, entitled to indemnification from either one standing alone. However, plaintiff's insurance carrier asserted that an "other insurance" clause in the contract enabled it to escape liability altogether. In the language of *Curran*:

"[1] in the event injury is sustained while the insured is occupying an automobile not owned by him, the coverage under their uninsured motorist clauses 'shall apply only as excess insurance over any other similar insurance available to such insured and applicable to such automobile as primary insurance, and this insurance shall then apply only in the amount by which the limit of liability for this coverage exceeds the applicable limit of liability of such other insurance.' " *Curran, supra,* 25 Ohio St.2d at 36–37, 266 N.E.2d at 568.

Because both policies involved had identical limits, the clause effectively prevented plaintiff's recovery under her own policy.

After examining a number of cases from other states, the Ohio Supreme Court decided that the "other insurance" clause was repugnant to O.R.C. § 3937.-18 because it would result in no coverage at all under insured's own policy. "To permit an insurer, who provides uninsured motorist coverage, to avoid liability by an 'other insurance' clause in cases where other insurance is available to his insured would thwart that legislative intent [the compensation of persons injured by uninsured motorists]." *Curran, supra,* 25 Ohio St.2d at 38, 266 N.E.2d at 569. The court held that the

owner's insurance carrier was the primary insurer and as such was to bear the liability for plaintiff's damages (as well as those suffered by the owner and other passengers) to its policy's limit, and that the remainder of her damages were to be borne, to policy limits, by her own insurer.

In the case at bar, State Farm issued three separate policies to Mr. Ray to cover his three automobiles. Each vehicle involved a separate and distinct risk, and in recognition of that fact, the uninsured motorist coverage in each policy protected the insureds in every circumstance except when they were in an owned car not described in the policy. Appellees' reasoning, if carried to its logical conclusion, would require an insurance carrier (or carriers) which insured one of a fleet of automobiles owned by a single insured (or family) to bear the increased risks that multiple vehicle ownership creates without increased premium. Such a result was neither contemplated by the parties nor compelled by the law in this case.

We find no merit in appellees' argument, based in part on dicta in *Weemhoff*, that there is a critical difference between separate policies issued to one insured on a number of owned automobiles and a single policy with separate premium payment provisions issued to a single insured on a fleet of automobiles. The important question is not the form that insurance companies use to extend coverage to multi-vehicle insureds, but whether the policy or policies clearly inform insureds that they are not purchasing "stacked" uninsured motorist coverage.

We conclude, therefore, that the clear language of the policies excluded the possibility of "stacking" the uninsured motorist coverages, and that those exclusions are effective under Ohio law. Accordingly, the judgment of the district court is reversed, and the cause is remanded for further proceedings consistent herewith.